UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GERARDO RAMIREZ MACEDO, | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO. |
| TOLTECOS INCORPORATED, MANUEL PALACIOS, and DAVID CARRILLO, | : |
| Defendants | : |

# COMPLAINT

## NATURE OF ACTION

1. Plaintiff Gerardo Ramirez Macedo (hereafter "Plaintiff Ramirez" or "Plaintiff") was an employee of Defendants during the period 2014-2017. Plaintiff Ramirez brings this action to recover unpaid minimum and overtime wages and statutory liquidated damages and attorneys' fees as authorized by the Fair Labor Standards Act ("FLSA") at 29 U.S.C. §§ 201 *et seq.*, and its implementing regulations.

2. Plaintiff Ramirez further brings claims herein pursuant to 42 U.S.C. § 1981 to vindicate his rights as a non-white Hispanic individual of Mexican ancestry employed in the Commonwealth of Pennsylvania to make and enforce contracts consistent with the legally required contractual terms for payment of minimum wages and overtime, to sue, be a party, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens of the Commonwealth of Pennsylvania.

3. Plaintiff Ramirez additionally seeks to invoke the supplemental jurisdiction of this Court to vindicate his rights under Pennsylvania law, specifically under the Pennsylvania

Minimum Wage Act of 1968 ("MWA"), 43 P.S §§ 333.01, *et. seq.*; the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq*, and their respective implementing regulations. Plaintiff Ramirez further seeks to invoke the supplemental jurisdiction of this Court to vindicate his rights under Pennsylvania common law.

## JURISDICTION AND VENUE

4. The federal question jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff Ramirez's state law claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as the claims arising under federal law and are so related to those claims that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

6. This Court further has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(2) and (3) over the claims in this matter since the amount in controversy exceeds the sum or value of $75,000 and the Plaintiff is a citizen of Mexico not admitted to the United States as a permanent resident and Defendants are citizens of either Pennsylvania or Maryland.

7. Defendants are actively conducting business in the Commonwealth of Pennsylvania and are therefore subject to this Court's personal jurisdiction.

8. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as Defendants' actions and/or omissions took place within York County, Pennsylvania within the Middle District of Pennsylvania.

## PARTIES

**Plaintiff**

9. Plaintiff Ramirez is a non-white Mexican citizen domiciled in Ciudad de México, Estados Unidos Mexicanos (Mexico City, United States of Mexico). During all relevant times in 2014, 2015, 2016, and 2017, he resided in York, Pennsylvania and was employed by Defendants in the United States.

10. Plaintiff Ramirez worked at Defendant Toltecos Incorporated in York, Pennsylvania in various positions, including as a preparation cook and table busser, from approximately mid-January 2014 until May 5, 2017.

11. Plaintiff Ramirez was an employee of Defendants within the meaning of the FLSA at 29 U.S.C. § 203(e) and the MWA at 43 P.S. § 333.103(h).

**Defendants**

**Toltecos Incorporated**

12. Defendant Toltecos Incorporated (hereafter "Defendant Toltecos") is a Pennsylvania domestic Business Corporation that was incorporated in Pennsylvania in 2009.

13. The Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations lists the address of Defendant Toltecos as 2600 East Market Street, York, Pennsylvania, 17402.

14. Upon information and belief, Defendant Toltecos operates a restaurant doing business as the "Guadalajara Authentic Mexican Restaurant," also alternatively known as the "Guadalajara Mexican Restaurant," located on the premises of 2600 East Market Street, York, Pennsylvania, 17402.

15. Upon information and belief, at all times relevant herein, Defendant Toltecos had an annual gross volume of sales that exceeded $500,000.

16. Upon information and belief, at all times relevant herein, Defendant Toltecos had employees engaged in commerce or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

17. At all times relevant herein, Defendant Toltecos has been an enterprise engaged in commerce within the meaning of the FLSA at 29 U.S.C. § 203(s).

18. At all times relevant herein, Defendant Toltecos has been an employer within the meaning of the FLSA at 29 U.S.C. § 203(d), the MWA at 43 P.S. § 333.103(g), and the WPCL at 43 P.S. § 260.2a.

**Individual Defendants**

**Manuel Palacios**

19. Upon information and belief, Defendant Manuel Palacios ("Defendant Palacios") is an individual domiciled in Pennsylvania and residing in the County of York in Pennsylvania.

20. The Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations website identifies Defendant Palacios as the President of Defendant Toltecos.

21. Retail Food Facility Inspection Reports from the Pennsylvania Department of Agriculture, Bureau of Food Safety and Laboratory Services identify Manuel Palacios as the "person in charge" of the "Guadalajara" restaurant facility at 2600 East Market Street, York, Pennsylvania 17402.

22. Upon information and belief, at all times relevant herein, Defendant Palacios held and exercised the authority to discipline, hire, or fire employees of Defendant Toltecos, including Plaintiff, and he acted directly or indirectly in the interest of Defendant Toltecos.

23. Upon information and belief, Defendant Palacios exercised substantial control over the business practices challenged in this lawsuit and has been personally responsible for all activities undertaken by him in the name of Defendant Toltecos since at least January 2014.

24. At all relevant times, Defendant Palacios was an employer within the meaning of the FLSA at 29 U.S.C. § 203(d), the MWA at 43 P.S. § 333.103(g), and the WPCL at 43 P.S. § 260.2a.

**David Carrillo**

25. Upon information and belief, Defendant David Carrillo ("Defendant Carrillo") is an individual domiciled in Maryland and residing in Bel Air, Maryland.

26. The Articles of Incorporation filed with the Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations for Defendant Toltecos identify Defendant Carrillo as the incorporator of the business.

27. The Guadalajara Authentic Mexican Restaurant holds an active liquor license from the Commonwealth of Pennsylvania for the property at 2600 East Market Street, York, Pennsylvania 17402, which lists David Carrillo as the President, Secretary, and Treasurer.

28. Retail Food Facility Inspection Reports from the Pennsylvania Department of Agriculture, Bureau of Food Safety and Laboratory Services list David Carrillo as the "owner" of the "Guadalajara" restaurant facility at 2600 East Market Street, York, Pennsylvania 17402.

29. Upon information and belief, Defendant Carrillo owns and operates additional restaurant businesses in Maryland, Virginia, and Pennsylvania, and these entities including Defendant Toltecos collectively constitute an "enterprise" within the meaning of the FLSA at 29 U.S.C. § 203(r).

30. At all relevant times, Defendant Carrillo was an employer within the meaning of the FLSA at 29 U.S.C. § 203(d), the MWA at 43 P.S. § 333.103(g), and the WPCL at 43 P.S. § 260.2a.

## STATEMENT OF FACTS

31. Defendant Palacios offered, and Plaintiff accepted, employment with the Guadalajara Authentic Mexican Restaurant to begin in mid-January 2014.

32. The terms of employment offered to Plaintiff included that Defendant Palacios would arrange housing for the Plaintiff in Pennsylvania.

33. During the duration of Plaintiff's employment, he was directly supervised by Defendant Palacios.

**Wage Payments**

34. Upon information and belief, Defendants did not establish a system for restaurant employees to clock in and out to record their hours worked and did not otherwise maintain accurate records of starting and stopping times for employees.

35. Defendants generally paid restaurant employees, including Plaintiff, a fixed amount in weekly wages.

36. While this amount was presented to Plaintiff as a weekly salary, his pay was reduced by a prorated amount if he missed a day of work due to illness.

37. At all times, Plaintiff was an employee whose job duties made him covered by the minimum wage and overtime protections of the FLSA at 29 U.S.C. §§ 206(a), 207(a)(1) and the MWA at 43 P.S. §§ 333.104–05.

38. At no time did Defendants establish employment and recordkeeping terms under which Defendants could qualify to claim a "tip credit" against required minimum wage and overtime payments due to Plaintiff pursuant to the requirements of the FLSA at 29 U.S.C. § 203(m) and FLSA regulations at 29 C.F.R. Part 531, Subpart D.

39. At no time did Defendants establish employment and recordkeeping terms under which Defendants could qualify to claim a "tip credit" against required minimum wage and overtime payments due to Plaintiff pursuant to the requirements of the MWA and regulations thereunder at 34 Pa. Code § 231.34.

40. Defendant Palacios, pursuant to Defendants' common business practices, paid Plaintiff in cash each Sunday for the work performed the previous seven-day calendar week ending the day before on Saturday.

41. Defendants regularly required, suffered, and permitted Plaintiff to work twelve (12) hours per day, from 9:00 a.m. to 1:00 p.m. and from 3 p.m. to 11 p.m.

42. Defendants regularly required, suffered and permitted Plaintiff to work six days each week.

43. Based on the above work schedule, Plaintiff generally worked at least approximately 70 hours each workweek.

44. At all relevant times, the federal and state minimum wage rate was $7.25 per hour. Plaintiff Ramirez was entitled to be paid $290.00 for the first 40 hours of work at $7.25 per hour.

45. At all relevant times, federal and state law required the payment of overtime at a rate of one and one-half times the base hourly wage rate for work over 40 hours in a week. Plaintiff Ramirez was entitled to be paid at least $10.88 per hour for each hour worked in excess of 40 hours in a workweek.

46. Base on the above estimated at least 70 hours of work in a workweek, the total amount of weekly wages due to Plaintiff Ramirez were at least $616.40.

47. When Plaintiff was initially hired in 2014, he was compensated on a weekly basis at a rate of approximately $300 per week.

48. Based on an estimated 70-hour workweek at a rate of $300 per week, plaintiff was underpaid by approximately $316.40 each week he worked in 2014.

49. Beginning on or about January 1, 2015, Plaintiff's pay rate increased to approximately $330 per week.

50. Based on an estimated 70-hour workweek at a rate of $330 per week, plaintiff was underpaid by approximately $286.40 each week in 2015.

51. Again on or about January 1, 2016, Plaintiff's pay rate increased to approximately $370 per week.

52. Based on an estimated 70-hour workweek at a rate of $370 per week, plaintiff was underpaid by approximately $246.40 each week in 2016.

53. Again on or about January 1, 2017, Plaintiff's pay rate increased to approximately $400 per week.

54. Based on an estimated 70-hour workweek at a rate of $400 per week, plaintiff was underpaid by approximately $216.40 each week he worked in 2017.

55. The amount of weekly cash wages occasionally varied, but Plaintiff was given no advance warning nor post-hoc explanation for any increase or decrease in pay.

56. Defendants regularly failed to pay Plaintiff the minimum wage required by both federal and Pennsylvania law, or caused or permitted other employees in supervisory or accounting role to do so.

57. Defendants regularly failed to pay Plaintiff any overtime premium for hours worked over forty (40) in a workweek, or caused or permitted other employees in supervisory or accounting role to do so.

**Deductions**

58. During the first year of his employment, from approximately January to December 2014, Plaintiff Ramirez lived in Defendant Palacios' home, along with two other Toltecos employees. Defendant Palacios charged Plaintiff between $100 and $200 per month for rent and utilities to live at that property.

59. During the period 2015 through May 2017, Defendant Palacios arranged housing for Plaintiff at 2437 Bradford Drive, York, Pennsylvania 17402, where Plaintiff lived until his separation from employment.

60. Upon information and belief, Defendant Palacios leased the 2437 Bradford Drive property from its owner and sub-leased the property to Defendants' employees. Defendant Palacios continued to charge Plaintiff between $100 and $200 per month for rent and utilities to live at the 2437 Bradford Drive property.

61. The 2437 Bradford Drive property contained three bedrooms and one bathroom. Plaintiff lived there with nine other employees of the Guadalajara Mexican Restaurant.

62. In January 2000, the City of York by Ordinance 1-2000 had adopted a comprehensive housing and building code which incorporated by reference the BOCA National Building Code, fourteenth edition, 1999, of the Building Officials and Code Administrators International, Inc. except as otherwise modified. That code governed the use and occupancy, and maintenance of buildings and structures.

63. Upon information and belief, the number of persons assigned by Defendant Palacios to occupancy of the 2437 Bradford Drive housing substantially exceeded the maximum permitted occupancy standards of the York housing code.

64. Upon information and belief, throughout the period of Plaintiff Ramirez's occupancy of that housing it had numerous conditions that violated the minimum occupancy requirements applicable to that housing.

65. Throughout his employment, on the second Sunday of each month, Defendant Palacios paid Plaintiff his weekly earnings, and required Plaintiff to immediately give back about half of this money as payment for rent.

66. These rent payments constituted de facto deductions from Plaintiff's pay, further reducing Plaintiff's wage rate.

**Recordkeeping**

67. At all times, Defendant Toltecos and its supervisory agents, including Defendants Palacios and Carrillo, were responsible for maintaining accurate records of the number of hours worked by Plaintiff Ramirez and other workers employed by Defendants including records reflecting daily starting and stopping times of work.

68. Pursuant to regulations under the FLSA, 29 C.F.R. §§ 516.2, 516.5 and 516.6, and the MWA at 34 Pa. Code § 231.31, such records were required to include, among other things, the number of hours worked each workday and workweek, the total wages due and paid each pay period, and the total deductions taken from wages in each pay period.

69. FLSA regulations at 29 C.F.R. § 516.6(a)(1) required such records to include daily starting and stopping times.

70. Defendants, pursuant to their common business practices, failed to comply with these requirements and did not maintain time or payroll records reflecting the hours worked and compensation received by Plaintiff.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT

71. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

72. Defendants knowingly violated the FLSA requirement that covered employees be compensated for every hour worked in a workweek and that they receive a minimum wage of not less than $7.25 per hour. *See* 29 U.S.C. § 206(a).

73. Defendants have further violated the minimum wage provisions of the FLSA by requiring Plaintiff to pay rent for housing in violation of local occupancy codes, which constituted an unlawful deduction reducing Plaintiff's pay further below the minimum wage.

74. Defendants knowingly violated the FLSA requirement that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

75. Defendants violated the FLSA requirement that employers maintain detailed payroll data concerning all covered employees. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, and 516.6.

76. A FLSA violation is willful if the employer knows or shows reckless disregard as to whether its conduct is prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

77. In the course of these violations, Defendants acted intentionally, willfully, and with reckless disregard of clearly applicable FLSA provisions.

78. As a consequence of the Defendants' intentional violations of his rights under the FLSA, Plaintiff is entitled to his unpaid minimum wages, plus an additional equal amount in liquidated damages, and attorneys' fees and costs of court, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**PENNSYLVANIA MINIMUM WAGE ACT OF 1968**

79. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

80. Defendants violated the MWA requirement that covered employees be compensated for every hour worked in a workweek and that they receive a minimum wage of not less than the federal minimum wage. *See* 43 P.S. §§ 333.104(a)–(a.1).

81. Regulations implementing the MWA provide that a payroll deduction for lodging may be "permitted as part payment of the minimum wage only when the facility affords the employee reasonable space, privacy, sanitation, heat, light and ventilation." 34 Pa. Code § 231.22(b). Because the housing provided to Plaintiff did not meet these standards, the deductions for such lodging constitute unlawful deductions further reducing Plaintiff's effective pay.

82. Defendants also violated the MWA requirement that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

83. Defendants also violated the MWA requirement that employers maintain detailed payroll data concerning all covered employees. *See* 43 P.S. § 333.108; 34 Pa. Code § 231.31.

84. Defendants acted intentionally, willfully, and with reckless disregard of clearly applicable MWA provisions.

85. As a consequence of the Defendants' violations of his rights under the MWA, Plaintiff is entitled to his unpaid wages, along with attorneys' fees and costs of court, pursuant to 43 P.S. § 333.113.

## THIRD CAUSE OF ACTION
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

86. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

87. The WPCL requires employers to notify employees of the rate of pay at the time of hiring, and to notify employees of a change in the pay rate prior to the time of the change. 43 P.S. § 260.4.

88. The WPCL also requires that all wages earned by an employee be timely paid by the employer on a regularly-scheduled payday. 43 P.S. § 260.3(a).

89. Regulations implementing the WPCL provide that deductions from wages for rent paid to the employer are only permissible if authorized by the employee in writing or authorized by a collective bargaining agreement. 34 Pa. Code § 9.1(11).

90. The monthly deductions from Plaintiff's wages in 2015, 2016 and 2017 for housing which failed to comply with the requirements of law were impermissible deductions under the WPCL.

91. Those housing deductions resulted in shortages in wage payments that remain unpaid for 30 days beyond the regularly scheduled payday.

92. Those housing deductions resulted in shortages in wage payments of more than 5% in wages in more than two pay periods in each calendar quarter during the period of Plaintiff's employment in 2015, 2016, and 2017.

93. Defendants have no good faith reason for withholding any wages owed to Plaintiff.

94. The WPCL provides that "[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday, … or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition [to the wages owed], as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 43 P.S. § 260.10.

95. As a consequence of the Defendants' violations of his rights under the WPCL, Plaintiff is entitled to claim unpaid wages and liquidated damages of $500 per calendar quarter pursuant to 43 P.S. §§ 260.9a–260.10.

### FORTH CAUSE OF ACTION
### UNJUST ENRICHMENT

96. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

97. By paying Plaintiff well below the required minimum wages for all hours worked, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiff.

98. Benefits conferred on Defendants by Plaintiff include, *inter alia*, his labor, for which Defendants paid a wage much lower than that required by law.

99. Defendants received this artificially cheap labor from the Plaintiff and therefore appreciated the benefit.

100. This enrichment of Defendants was unjust and violates principles of justice, equity, and good conscience.

101. As a consequence of Defendants' unjust enrichment, Plaintiff is entitled to the disgorgement of funds equal to the difference between the wages paid by Defendants and the actual value of his labor at statutorily required minimum wage rates.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 AS AMENDED**

102. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

103. Plaintiff Ramirez brings claims herein pursuant to 42 U.S.C. § 1981 to vindicate his rights as a non-white Hispanic person of Mexican ancestry employed in the Commonwealth of Pennsylvania to make and enforce contracts consistent with the legally required contractual terms for payment of minimum wages and overtime, to sue, be a party, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens of the Commonwealth of Pennsylvania.

104. Defendants, by and through their agents, have asserted that since Plaintiff is a Mexican foreign national outside of the U.S. that he has no basis to sue in courts in the Commonwealth of Pennsylvania to enforce his contractual rights arising out of his employment with Defendants.

105. Upon information and belief, Defendants have intentionally relied upon the status of their employees as non-white Hispanic persons of Mexican ancestry as a basis for establishing a legally impermissible system of cash payment of weekly wages for workers regularly performing overtime work at wage rates far below the wage rates required under federal law and laws of the Commonwealth of Pennsylvania without concern that such employees would successfully assert their claims to minimum protected wage rates.

106. At all times relevant to this matter, Defendants have been required to offer employment to employees on terms that conformed with federal and state laws requiring payment of minimum wages at a rate of $7.25 per hour and overtime at a rate of one and one-half times the regular rate or at least $10.88 per hour.

107. In 2014, Plaintiff was paid a weekly amount of $300 per week. In weeks in which Plaintiff worked at least 70 hours in the workweek, his effective regular rate for the first 40 hours of work was only approximately $3.53 per hour and his effective overtime rate was only approximately $5.30 per hour.

108. In 2015, Plaintiff was paid a weekly amount of $330 per week. In weeks in which Plaintiff worked at least 70 hours in the workweek, his effective regular rate for the first 40 hours of work was only approximately $3.88 per hour and his effective overtime rate was only approximately $5.82 per hour.

109. In 2016, Plaintiff was paid a weekly amount of $370 per week. In weeks in which Plaintiff worked at least 70 hours in the workweek, his effective regular rate for the first 40 hours of work was only approximately $4.35 per hour and his effective overtime rate was only approximately $6.53 per hour.

110.    In 2017, Plaintiff was paid a weekly amount of $400 per week. In weeks in which Plaintiff worked at least 70 hours in the workweek, his effective regular rate for the first 40 hours of work was only approximately $4.71 per hour and his effective overtime rate was only approximately $7.07 per hour.

111.    At all times relevant to this matter, Defendants, by and through Defendant Palacios, provided housing to non-white Hispanic persons, including Plaintiff, who were employed by Defendants at the "Guadalajara Authentic Mexican Restaurant" in York, Pennsylvania.

112.    During the years 2015, 2016 and 2017, the housing provided to Plaintiff and other workers at 2437 Bradford Drive, York, Pennsylvania was grossly overcrowded under the requirements of the City of York Housing Code and was otherwise not in compliance with the minimum habitability requirements of that Housing Code.

113.    At all relevant times in the years 2015, 2016, and 2017, Defendants, by and through Defendant Palacios, required Defendants' employees who resided in employer provided housing to pay monthly out of a cash deduction from wages the full amount asserted by Defendants as due for rent and utilities despite the ongoing violations of the City of York Housing Code.

114.    At all relevant times in the years 2015-2017, state and federal minimum wage laws forbid deductions for housing costs for the housing at 2437 Bradford Drive, York, Pennsylvania because of the substandard conditions of that housing which was not provided in compliance with law.

115.    The failure and refusal of Defendants to comply with their duty to offer habitable housing in compliance with law was based upon the belief that Defendants' employees

occupying this housing were Hispanic persons who would not be able to enforce the same rights enjoyed by white citizens of the Commonwealth of Pennsylvania.

116.    As a consequence of Defendants' violations of Plaintiff's rights under 42 U.S.C. § 1981, Plaintiff is entitled to compensatory and punitive damages, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award actual unpaid wage damages and equal amounts as liquidated damages for violations of the FLSA;

2. Award actual unpaid wage damages for violations of the MWA;

3. Award actual unpaid wages and liquidated damages as provided in the WPCL;

4. Find that Defendants were unjustly enriched by Plaintiff's labor and order the disgorgement of funds equal to the difference between the wages paid by Defendants and the actual value of their labor at statutorily required minimum wage rates;

5. Award actual and punitive damages for violations of Plaintiff's rights under 42 U.S.C. § 1981;

6. Award attorneys' fees and costs to Plaintiff; and

7. Award such other relief as this Court may deem just and proper.

Dated: February 8, 2018

                                                                                         <u>/s/ Chelsea L.D. Edwards</u>
Chelsea Edwards, Esq.
    PA 321089
    Email: cedwards@friendsfw.org
Liz. Maria Chacko, Esq.
    PA 95115
    Email: lchacko@friendfw.org
Friends of Farmworkers
699 Ranstead Street, 4th Floor
Philadelphia, PA 19106
(215) 733-0878

*Attorneys for Plaintiff*